******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN DOE 1 ET AL. *v.* BOARD OF EDUCATION
OF THE TOWN OF WESTPORT ET AL.
(AC 44153)

JOHN DOE 2 ET AL. *v.* BOARD OF EDUCATION
OF THE TOWN OF WESTPORT ET AL.
(AC 44122)

Moll, Alexander and Bear, Js.

*Syllabus*

In each case, the plaintiff minor child, A and B, respectively, and his parents,
sought to recover damages from the defendants, the town of Westport,
its board of education, the town's superintendent of schools, L, and
certain employees of one of the town's middle schools, namely, the
principal, S, the vice principal, M, and a physical education teacher, Q,
for injuries allegedly sustained as a result of, inter alia, the defendants'
negligence in responding to reports of bullying of A and B by their
classmates while they attended the middle school. Both cases arose out
of the same incident, during which A and B were attacked by other
students while in gym class. The plaintiffs filed reports detailing the gym
incident and prior incidents of bullying with the school's administration.
Thereafter, A and B both had bullying complaints filed against them by
other students involved in the gym incident and they received suspen-
sions as a result thereof. A few weeks later, A was again bullied by a
fellow student. He reported the incident to S, who insisted that he write
down his account of what had occurred. When A instead asked to speak
with his father, S grabbed his arm in a hostile manner and shook it.
The plaintiffs alleged, inter alia, that, in their handling of the bullying
incidents, the defendants failed to comply with the safe school climate
plan that had previously been implemented at the direction of the board
in accordance with the applicable statute ((Rev. to 2015) § 10-222d).
The plaintiffs further alleged that the defendants retaliated against them
for filing their bullying complaints by, among other things, issuing sus-
pensions to A and B. Additionally, in the first action, the plaintiffs alleged
that S assaulted A when she grabbed and shook his arm. The trial court
consolidated the cases and granted the defendants' motions for summary
judgment with respect to all claims except those against S in connection
with the first action, as it found that there was a genuine issue of material
fact concerning her alleged assault of A. Thereafter, the plaintiffs in
each case separately appealed to this court. *Held*:
1. The plaintiffs' inadequately briefed their claims that, in granting the
motions for summary judgment, the trial court failed to construe the
evidence in the light most favorable to them; accordingly, the plaintiffs
abandoned such claims and this court declined to review them.
2. The trial court did not err in granting the motions for summary judgment
as to the claims of negligence and negligent infliction of emotional
distress against M, Q, L and the board in the first case and against S,
M, Q, L and the board in the second case: the trial court properly
determined that the individual defendants and the board were protected
by statutory immunity (§ 10-222*l*) with respect to the claims of negligence
alleged against them for violations of the plan because the plaintiffs
failed to set forth any argument in their appellate briefs challenging the
trial court's determination that the defendants demonstrated the absence
of a genuine issue of material fact that they reported, investigated and
responded to the bullying complaints in a manner that was consistent
with the safe school climate plan and the plaintiffs failed to present the
necessary factual predicate to raise a genuine issue of material fact as
to whether the defendants acted in bad faith for purposes of § 10-222*l*;
moreover, this court deemed abandoned any claim relating to the trial
court's determination that the defendants were protected by governmen-
tal immunity pursuant to the applicable statute (§ 52-557n (a) (2) (B))
from negligence claims relating to their discretionary acts because, on
appeal, the plaintiffs failed to raise a claim challenging such determina-
tion and did not even reference the applicability of governmental immu-

nity prior to filing their reply briefs.

3. The trial court properly rendered summary judgment in favor of M, L and Q in the first case and in favor of S, M, L and Q in the second case with respect to the plaintiffs' recklessness claims: the allegations merely used the term "recklessness" to describe the same conduct that the plaintiffs previously described as negligence, which was insufficient as a matter of law to support a claim of recklessness; moreover, the evidence, when viewed in the light most favorable to the plaintiffs, failed to demonstrate the existence of a genuine issue of material fact that the individual defendants intentionally, wilfully, wantonly and recklessly violated the plan, as the defendants submitted evidence demonstrating that they responded to and investigated the acts of bullying reported and took steps to avoid further instances of bullying, and there was no evidence demonstrating that the defendants had notice of any bullying against A and B prior to the gym incident; furthermore, the plaintiffs' claims of retaliation with respect to A were unpersuasive, as he was suspended on the basis of admitted acts, his gym class was changed due to information S received concerning his interactions with another child in the class, and the plaintiffs failed to address how the ordering of a special education planning and placement team meeting for A constituted retaliation, and the allegations of retaliation against B did not rise to the level of recklessness necessary to defeat the motion for summary judgment; accordingly, the conduct of the individual defendants could not be characterized as an extreme departure from ordinary care in a situation where a high degree of danger was apparent.

4. The trial court properly rendered summary judgment in favor of the town and the board with respect to the plaintiffs' claims of respondeat superior liability as it related to the alleged negligence of M, L and Q in the first case and S, M, L and Q in the second case: because the trial court properly granted the motions for summary judgment as to the negligence claims against the individual defendants, there was no individual liability to which vicarious liability against the town or the board could attach.

5. The trial court properly rendered summary judgment in favor of L and the board with respect to the allegations that they retaliated against the plaintiffs for advocating for A and B, as L and the board were protected against the negligence claims by statutory and governmental immunity and there was no genuine issue of material fact that the actions of L did not amount to recklessness.

Argued January 4—officially released June 7, 2022

*Procedural History*

Action, in each case, to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Bellis, J.*, granted the defendants' motion to consolidate the cases; thereafter, the court, *Abrams, J.*, transferred the cases to the judicial district of Waterbury, Complex Litigation Docket; subsequently, the court, *Bellis, J.*, granted the defendants' motions for summary judgment with respect to certain counts of the complaints and rendered judgments thereon, from which the plaintiffs filed separate appeals to this court. *Affirmed.*

*Piper A. Paul* filed briefs for the appellants (plaintiffs in each case).

*Jonathan C. Zellner*, with whom, on the brief, was *Ryan T. Daly*, for the appellees (defendants in each case).

*Opinion*

BEAR, J. These appeals involve consolidated actions[1] concerning complaints of the bullying of two minor children by some of their classmates, which occurred while they attended Coleytown Middle School (middle school) in the town of Westport, and the alleged failures of school staff and administration in addressing those bullying complaints. In Docket No. AC 44153, the plaintiffs, John Doe 1, Jane Doe 1, and Jack Doe 1,[2] appeal from the judgment of the trial court granting, in part, the motion for summary judgment filed by the defendants, the Board of Education of the Town of Westport (board); Micah Lawrence, the vice principal of the middle school; Elliott Landon, the superintendent of schools for the Westport school system; Richard Quiricone, a physical education teacher at the middle school; and the town of Westport (town).[3] On appeal, the Doe 1 plaintiffs claim that the court erred in granting the Doe 1 defendants' motion for summary judgment. Specifically, the Doe 1 plaintiffs claim that the court improperly (1) failed to view the evidence in the light most favorable to the Doe 1 plaintiffs, (2) determined that the Doe 1 defendants are immune from liability under General Statutes § 10-222*l* because (a) the allegations of negligence in counts three, four, five, eight, and nine[4] involve issues relating to whether the Doe 1 defendants acted in good faith and adequately reported and investigated the bullying allegations, which are factual issues and should not have been decided on a motion for summary judgment, and (b) the Doe 1 defendants failed to respond to six bullying complaints, (3) rendered summary judgment in favor of Lawrence, Landon, and Quiricone with respect to the claim of recklessness in count six because the claim requires a determination of their intent, which is a question of fact, (4) granted the motion for summary judgment as to count ten, which alleges a claim of respondeat superior liability against the board and the town, and (5) granted the motion for summary judgment when a genuine issue of material fact exists as to whether Landon or the board retaliated against the Doe 1 plaintiffs, as alleged in counts five, six, and nine. We disagree and affirm the judgment of the trial court in AC 44153.

In Docket No. AC 44122, the plaintiffs, John Doe 2, Jane Doe 2, and Jack Doe 2,[5] appeal from the judgment of the trial court granting the motion for summary judgment filed by the defendants, the board, Kris Szabo, Lawrence, Landon, Quiricone, and the town.[6] On appeal, the Doe 2 plaintiffs claim that the court improperly granted the Doe 2 defendants' motion for summary judgment. Specifically, the Doe 2 plaintiffs claim that (1) the court improperly failed to view the evidence in the light most favorable to the Doe 2 plaintiffs, (2) the allegations of negligence involve factual issues that are not susceptible to summary adjudication, (3) the claim

of recklessness against Lawrence, Landon, Szabo, and Quiricone in count five requires a determination of their intent, which is a question of fact, (4) the court improperly granted the motion for summary judgment as to the claim of respondeat superior liability against the board and the town in count nine, and (5) a genuine issue of material fact exists as to whether Landon or the board retaliated against the Doe 2 plaintiffs, as alleged in counts four, five, and eight. We disagree and affirm the judgment of the trial court in AC 44122.

Before we address the substance of the claims in both appeals, we first set forth our well settled standard of review of a trial court's decision granting a motion for summary judgment. "The fundamental purpose of summary judgment is preventing unnecessary trials. . . . If a plaintiff is unable to present sufficient evidence in support of an essential element of his cause of action at trial, he cannot prevail as a matter of law. . . . To avert these types of ill-fated cases from advancing to trial, following adequate time for discovery, a plaintiff may properly be called upon at the summary judgment stage to demonstrate that he possesses sufficient counterevidence to raise a genuine issue of material fact as to any, or even all, of the essential elements of his cause of action. . . .

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .

"It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Only if the defendant as the moving party has submitted no evidentiary proof to rebut the allegations in the complaint, or the proof submitted fails to call those allegations into question, may the plaintiff rest upon factual allegations alone. . . .

"[I]ssue-finding, rather than issue-determination, is

the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Salamone* v. *Wesleyan University*, 210 Conn. App. 435, 443–44, 270 A.3d 172 (2022).

## I

## AC 44153

We first address the appeal of the Doe 1 plaintiffs in AC 44153. The record before the court, viewed in the light most favorable to the Doe 1 plaintiffs as the non-moving parties, reveals the following relevant facts and procedural history.

The Doe 1 plaintiffs filed a revised complaint on April 10, 2019, alleging the following facts. Jack Doe 1 was the victim of bullying in the town's school system from January, 2013, to at least June 22, 2017. During that time, he was called names by fellow students, ridiculed about his athletic ability, and subjected to racial epithets, physical assaults, threats, mental abuse, and repeated and numerous comments about his sexual orientation. On March 18, 2016, Jack Doe 1 was attacked and assaulted by four students during gym class at the middle school. The attack, which occurred in an area of the gym where the substitute gym teacher[7] could not see the students, was not witnessed by a teacher or an administrator. Following that incident, on March 19, 2016, Jack Doe 1 filed with the administration of the middle school a bullying report that detailed the March 18, 2016 assault. Thereafter, on March 22, 2016, John Doe 1 and Jane Doe 1 filed with the administration several bullying reports that detailed Jack Doe 1's extensive history of being bullied. According to the revised complaint, the Doe 1 defendants never initiated a formal or complete investigation of the March 19, 2016 bullying report filed by Jack Doe 1, and they either failed to investigate or conducted a wholly inadequate investigation of the claims alleged in the March 22, 2016 bullying reports.

Subsequently, John Doe 1 and Jane Doe 1 were informed by Szabo that two bullying complaints had been filed against Jack Doe 1. After those allegations were sustained, Jack Doe 1 received two days of in-school suspension, which the Doe 1 plaintiffs allege was done in retaliation for their complaints of the bullying of Jack Doe 1.

Thereafter, on April 11, 2016, Jack Doe 1 was bullied and called a derogatory name by another student. Jack Doe 1 was very upset by the incident and asked Szabo

if he could speak to his guidance counselor, but Szabo refused and, instead, insisted that he write down what happened. Jack Doe 1 then requested to speak with his father, but Szabo refused and, in a hostile manner, grabbed Jack Doe 1's arm and shook it. The April 11, 2016 incident was never investigated, and, on April 12, 2016, Szabo issued a two day out-of-school suspension to Jack Doe 1,[8] which the Doe 1 plaintiffs claim was retaliatory in nature. In February, 2018, the Doe 1 plaintiffs commenced the underlying action in AC 44153 against the Doe 1 defendants.

In counts three, four, five, and nine[9] of the revised complaint, the Doe 1 plaintiffs allege claims of negligence against the Doe 1 defendants. The claims are premised on the failure of those defendants to comply with a bullying prevention and intervention policy that had been adopted by the board, as well as a safe school climate plan (plan) that the town's public schools had developed and implemented at the direction of the board and in accordance with General Statutes (Rev. to 2015) § 10-222d.[10] As alleged in the complaint, the plan, which prohibits bullying within the town's public schools, requires the following: "(a) The principal of each school [is] to intervene in order to address incidents of bullying against a single individual; (b) the principal, or their designee, of each school [is] to serve as the safe school climate specialist; (c) the school [is] to accept reports of bullying from students and parents; (d) the safe school climate specialist [is] to investigate or supervise the investigation of reported acts of bullying; (e) school employees who witness acts of bullying or receive reports of bullying [are] to notify a school administrator not later than one (1) day after witnessing said act and to file a written report within two (2) days of said act; (f) the school [is] to notify the parents of all students involved in a report of bullying regarding the nature of said report; (g) the school [is] to invite the parents of all students involved in a verified report of bullying to a meeting to communicate the measures being taken to ensure the safety of the victim and the policies and procedures in place to prevent further acts of bullying; (h) the school [is] to develop a student safety support plan for the victim of a verified act of bullying; (i) the school [is] to develop a specific written intervention plan to address repeated incidents of bullying against a single individual; (j) the school [is] to counsel students, when discipline is not reasonably required, regarding bullying; and (k) the school [is] to only issue an in-school suspension after informing the perpetrator of a verified act of bullying, and providing them with the opportunity to respond."

According to the Doe 1 plaintiffs, the Doe 1 defendants negligently violated the terms of the plan by "issuing suspensions to Jack Doe 1 without providing him with the details of the complaint against him and an opportunity to respond," and by failing (1) to intervene

to address the repeated acts of bullying against Jack Doe 1, (2) to accept reports of bullying from the Doe 1 plaintiffs, (3) to "investigate reports of bullying against Jack Doe 1," (4) "to report acts of bullying witnessed by staff members," (5) "to disclose to the [Doe 1] plaintiffs the details of reports of bullying made against Jack Doe 1," (6) "to invite the [Doe 1] plaintiffs to a meeting with school officials to communicate the measures being taken to ensure the safety of the victim and the policies and procedures in place to prevent further acts of bullying," (7) "to develop a student safety support plan for Jack Doe 1," (8) "to develop a specific written intervention plan to address repeated incidents of bullying against Jack Doe 1," and (9) "to counsel Jack Doe 1 regarding bullying prior to issuing discipline . . . ."

With respect to Landon, the town, and the board, the Doe 1 plaintiffs also allege that they were negligent in allowing retaliation against Jack Doe 1. They further allege that Lawrence, Quiricone, and Landon breached a duty of care owed to Jack Doe 1 by failing to detect, to investigate, and to remediate bullying against him, by failing to supervise students in gym class, and by allowing a hostile environment where bullying thrived, and that the town and the board breached their duties under the plan to Jack Doe 1 through the actions and omissions of their employees, agents, and officers. Finally, as to the claims of negligence, the Doe 1 plaintiffs allege that the duties of the Doe 1 defendants under the plan are ministerial in nature and that, as a result of the negligence of the Doe 1 defendants, the Doe 1 plaintiffs have incurred expenses and fees, and suffered and will continue to suffer mental and emotional distress, and that Jack Doe 1 suffered physical injuries and was negatively affected by the suspensions imposed by the middle school that were entered in his school transcript.

Count six of the revised complaint alleges a claim of recklessness against Landon, Lawrence, and Quiricone. Specifically, count six alleges that those defendants "had a duty to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan," "knew, or should have known, of the dangerous impact of a failure to follow the . . . [p]lan would have on students, including Jack Doe 1," and "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by failing to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan and . . . [§] 10-222d." Count six further alleges that those defendants acted with reckless disregard to the safety of Jack Doe 1, placed him in a situation of imminent harm, and "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by retaliating against the [Doe 1 plaintiffs], including, but not limited to, ordering a [special education planning and placement team meeting] for Jack Doe 1 [even though he had exceptional grades],

changing his class schedule, and suspending [him] twice."

Count eight[11] of the revised complaint alleges against the Doe 1 defendants a claim for negligent infliction of emotional distress. Specifically, the Doe 1 plaintiffs allege that the conduct of the Doe 1 defendants "involved an unreasonable risk of causing emotional distress to Jack Doe 1, a minor," and "was done with a conscious disregard for the rights and safety of Jack Doe 1," that the emotional distress suffered by Jack Doe 1 was "reasonable in light of the conduct perpetrated by the [Doe 1] defendants," and that the Doe 1 defendants "knew, or should have known, that their conduct involved an unreasonable risk of causing emotional distress to Jack Doe 1," who suffered emotional distress as a result of their conduct. Finally, in count ten, the Doe 1 plaintiffs allege a claim of respondeat superior liability against the town and the board, claiming that they are responsible for the negligent acts or omissions of their employees.

In response to the revised complaint, the Doe 1 defendants filed an answer and two special defenses: the first special defense alleges that they are entitled to statutory immunity under § 10-222*l*, and the second special defense alleges that, because the acts as alleged in the revised complaint are discretionary in nature, they are entitled to governmental immunity under General Statutes § 52-557n (a) (2) (B). The Doe 1 plaintiffs filed a general denial of the special defenses. Thereafter, the Doe 1 defendants filed a motion for summary judgment, which the court granted as to all counts except for count two. The appeal in AC 44153 followed. Additional facts and procedural history will be set forth as necessary.

A

The Doe 1 plaintiffs' first claim is that the court, in deciding the motion for summary judgment, improperly failed to view the evidence in the light most favorable to the Doe 1 plaintiffs. In support of this claim, the Doe 1 plaintiffs cite general principles governing motions for summary judgment, including the principle that, in deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. See *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 11, 938 A.2d 576 (2008); see also *Lasso* v. *Valley Tree & Landscaping, LLC*, 209 Conn. App. 584, 592, 269 A.3d 202 (2022). After citing those general principles, however, the Doe 1 plaintiffs follow with a conclusory statement that "the trial court failed to consider the full factual record in the light most favorable to the [Doe 1] plaintiffs when it granted [the Doe 1] defendants' motion for summary judgment." Their appellate brief is devoid of any analysis of this claim and fails to explain how, or to set forth any specific instance in which, the court failed to construe

the evidence in the light most favorable to the Doe 1 plaintiffs.

"[A] claim must be raised and briefed adequately in a party's principal brief, and . . . the failure to do so constitutes the abandonment of the claim. . . . We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle *without analyzing the relationship between the facts of the case and the law cited*." (Citation omitted; emphasis added; internal quotation marks omitted.) *DeJesus* v. *R.P.M. Enterprises, Inc.*, 204 Conn. App. 665, 707, 255 A.3d 885 (2021); see also *Rousseau* v. *Weinstein*, 204 Conn. App. 833, 855, 254 A.3d 984 (2021) ("[c]laims that are inadequately briefed generally are considered abandoned" (internal quotation marks omitted)). Accordingly, we deem this inadequately briefed claim abandoned and decline to review it.

B

The Doe 1 plaintiffs next challenge the court's decision granting the motion for summary judgment as to the counts of the revised complaint alleging negligence and negligent infliction of emotional distress against the Doe 1 defendants, which include counts three, four, five, eight, and nine.[12] With respect to the negligence allegations in those counts that are premised on the failure of the Doe 1 defendants to comply with the plan, the court granted the motion for summary judgment in favor of Lawrence, Quiricone, Landon, and the board on the ground that those individual defendants and the board are entitled to statutory immunity under § 10-222*l*. To the extent that the negligence allegations in those counts concern the discretionary duties to supervise the gym class or to manage and supervise school employees, rather than a violation of the plan, the court concluded that the Doe 1 defendants are protected by governmental immunity pursuant to § 52-557n (a) (2) (B). We address the court's conclusions regarding statutory and governmental immunity in turn.

1

Statutory Immunity

The Doe 1 plaintiffs raise two arguments concerning the court's ruling that Lawrence, Quiricone, Landon, and the board are entitled to statutory immunity for the claims alleged in counts three, four, five, eight, and nine. Specifically, they argue that (1) counts three, four, five, eight, and nine involve factual issues relating to

whether the Doe 1 defendants acted in good faith and adequately reported and investigated the bullying allegations, as required under § 10-222*l* for immunity to apply, and that those factual issues should not have been decided on a motion for summary judgment, and (2) the court improperly determined that the Doe 1 defendants are immune from liability under § 10-222*l* when those defendants failed to respond to six bullying complaints. We disagree with both claims.

Before we address the substance of the court's decision granting the motion for summary judgment on the basis of statutory immunity, we first set forth the language of the relevant statutes and general principles that guide us in our analysis of these claims.

Pursuant to § 10-222d (b), "[e]ach local and regional board of education shall develop and implement a safe school climate plan to address the existence of bullying . . . in its schools. . . ." General Statutes (Rev. to 2015) § 10-222d (b). Under subsection (b) of § 10-222d, each plan "shall" contain certain requirements, as set forth in subdivisions (1) through (18). "These requirements, generally, enable the reporting of instances of bullying, mandate school officials to forward and investigate these reports to a specialist, who would then notify the parents of the students, and direct the adoption of a comprehensive prevention and intervention strategy." *Palosz* v. *Greenwich*, 184 Conn. App. 201, 210–11, 194 A.3d 885, cert. denied, 330 Conn. 930, 194 A.3d 778 (2018). Under subsection (c) of § 10-222d, "each local and regional board of education . . . shall submit a safe school climate plan to the [D]epartment [of Education] for review and approval . . . ." General Statutes (Rev. to 2015) § 10-222d (c). "Section 10-222d (d) compels each board of education to require each school in the district to complete and submit an assessment of its policy to the Department of Education pursuant to General Statutes § 10-222h." *Palosz* v. *Greenwich*, supra, 211.

In the present case, the Doe 1 plaintiffs do not dispute and, in fact, allege that the Doe 1 defendants complied with the development and implementation requirements of § 10-222d by developing the plan in accordance with the bullying prevention and intervention policy that had been adopted by the board. Their main contention is that the Doe 1 defendants did not comply with the terms of the plan. We, thus, must examine § 10-222*l*, which affords immunity to school employees and the board when acting in accordance with a safe school climate plan. Specifically, § 10-222*l* (a) provides in relevant part: "No claim for damages shall be made against a school employee, as defined in section 10-222d, who reports, investigates and responds to bullying . . . in accordance with the provisions of the safe school climate plan, described in section 10-222d, if such school employee was acting in good faith in the

discharge of his or her duties or within the scope of his or her employment. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct." Likewise, subsection (c) of § 10-222*l* affords immunity to a "board of education that implements the safe school climate plan, described in section 10-222d, and reports, investigates and responds to bullying . . . if such local or regional board of education was acting in good faith in the discharge of its duties. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct."

Thus, for statutory immunity under § 10-222*l* to apply to the defendant school employees—Lawrence, Quiricone, and Landon—they must have (1) reported, investigated, and responded to bullying, (2) in accordance with the provisions of the plan, (3) in good faith, and (4) in the discharge of their duties or within the scope of their employment. Similarly, for it to apply to the board, the board must have (1) implemented a safe school climate plan, (2) reported, investigated, or responded to bullying, (3) in good faith, and (4) in the discharge of its duties. Here, the parties do not dispute that the board implemented the plan and that the actions taken by the Doe 1 defendants were done in the discharge of their duties and within the scope of their employment. The primary issue before the court in deciding the motion for summary judgment was whether a factual predicate existed to raise a genuine issue of material fact regarding whether Lawrence, Quiricone, Landon, and the board reported, investigated, and responded to bullying in good faith.

a

The Doe 1 plaintiffs first claim that they "set forth a significant amount of evidence to show that [the Doe 1] defendants were negligent and did not act in good faith, easily raising a genuine issue of material fact. For this reason, the trial court erred when it granted [the motion for] summary judgment [in favor of the Doe 1] defendants . . . ." They cite the following evidence as demonstrating that they met their burden of showing the existence of a disputed issue of material fact as to the bad faith of the Doe 1 defendants: (1) Szabo, as the safe school climate specialist, did not refer the complaints of bullying based on sexual orientation to a Title IX[13] coordinator, as required under the plan,[14] (2) the specific written intervention plan developed by the Doe 1 defendants was generic in nature and did not address the repeated incidents of bullying against Jack Doe 1, as required under the plan, (3) the board did not conduct an informal hearing before suspending Jack Doe 1, (4) Szabo suspended Jack Doe 1 on the basis of anonymous bullying reports, in violation of the plan, (5) a meeting with John Doe 1 and Jane Doe 1 to discuss measures

to prevent further incidents of bullying did not take place as required under the plan, (6) the Doe 1 defendants were aware that a curtain used in the gym created a blind spot for supervision of students, which created a hazardous condition, and (7) Landon and the board have a legal duty to ensure that school employees follow the plan and, thus, there is a genuine issue of material fact as to whether Landon and the board are liable. We are not persuaded.

We agree with the court's conclusion that the evidence presented by the Doe 1 plaintiffs failed to raise a genuine issue of material fact regarding the good faith efforts of the Doe 1 defendants. We first note that the negligence counts in the revised complaint do not allege that the Doe 1 defendants acted in bad faith by deceiving or misleading the Doe 1 plaintiffs or that they acted with a dishonest purpose or improper motive. Rather, they allege that Lawrence, Quiricone, Landon, and the board breached a duty owed to Jack Doe 1, acted with disregard for the rights and safety of the Doe 1 plaintiffs, failed to exercise reasonable care, and failed to comply with the plan. In their memorandum of law in opposition to the Doe 1 defendants' motion for summary judgment, the Doe 1 plaintiffs argued that the Doe 1 defendants were not immune from liability under § 10-222*l* because they failed to act in good faith, stating: "[The] defendants acted recklessly and intentionally when they failed or refused to follow the plan, properly investigate bullying . . . prevent bullying, failed to investigate Jack Doe 1 being called a [derogatory name], create[d] an unsafe space in the gymnasium and when they retaliated against Jack Doe 1. Furthermore . . . [the Doe 1] defendants did not act in good faith when they violated the plan, conducted or failed to conduct investigations, enacted preventative measures and retaliated against Jack Doe 1 . . . ." Thus, the Doe 1 plaintiffs, in making their bad faith argument, simply restated their allegations of recklessness and negligence.

"It is the burden of the party asserting the lack of good faith to establish its existence . . . ." *Habetz* v. *Condon*, 224 Conn. 231, 237 n.11, 618 A.2d 501 (1992). "[B]ad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . . [B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." (Internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 171, 530 A.2d 596 (1987).

In *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 250, 618 A.2d 506 (1992), our Supreme Court

addressed an argument regarding bad faith claims similar to the one raised in the present case by the Doe 1 plaintiffs, stating: "The plaintiff further claims that bad faith is a factual question and as such is not appropriately determined by a motion for summary judgment. The plaintiff relies on cases in which we have held that issues of motive, intent and good faith are not properly resolved on a motion for summary judgment. . . . We have also held, however, that even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." (Citations omitted.) Similarly, in *Dinnis* v. *Roberts*, 35 Conn. App. 253, 261, 644 A.2d 971, cert. denied, 231 Conn. 924, 648 A.2d 162 (1994), this court concluded that the plaintiffs, in opposing a motion for summary judgment, "failed to present the necessary factual predicate to raise a genuine issue as to the defendants' bad faith" where they simply referred to the allegations of bad faith in their complaint and failed to submit supporting documentation showing bad faith on the part of the defendants. See also *Wadia Enterprises, Inc.* v. *Hirschfeld*, 27 Conn. App. 162, 170, 604 A.2d 1339 ("[m]ere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment" (citation omitted)), aff'd, 224 Conn. 240, 618 A.2d 506 (1992).

In the present case, the Doe 1 plaintiffs did not set forth a factual predicate to raise an issue of material fact as to whether the Doe 1 defendants acted in bad faith; instead, they make conclusory assertions that are not based on any evidence in the record. "While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion [for summary judgment] . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citation omitted; internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 315–16, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000); see also *Sidorova* v. *East Lyme Board of Education*, 158 Conn. App. 872, 893 n.20, 122 A.3d 656 ("[s]ummary judgment is proper . . . where the plaintiff has failed to allege facts to support its cause of action"), cert. denied, 319 Conn. 911, 123 A.3d 436 (2015); *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 52, 19 A.3d 215 (2011) (trial court properly rendered summary judgment in favor of defendants where plaintiff failed to demonstrate evidence of bad faith). As our Supreme Court previously has stated, bad faith is not simply negligence and implies something more, such as a conscious wrongdoing with a dishonest purpose. See *Buckman* v. *People Express, Inc.*, supra, 205 Conn. 171. We conclude that the Doe 1 plaintiffs failed to present a factual predi-

cate in opposition to the motion for summary judgment to demonstrate the existence of a genuine issue of material fact as to whether the Doe 1 defendants acted in bad faith for purposes of § 10-222*l*.

b

The Doe 1 plaintiffs also claim that the court improperly determined that the Doe 1 defendants are immune from liability under § 10-222*l* when those defendants failed to respond to six bullying complaints. According to the Doe 1 plaintiffs, because the Doe 1 defendants did not respond to or investigate those bullying complaints, they could not avail themselves of the immunity afforded by § 10-222*l*. The following additional facts are relevant to this claim.

On April 6, 2016, John Doe 1, on behalf of Jack Doe 1, filed six bullying complaints. Those complaints concerned separate acts of bullying that allegedly took place in September/October, 2015, on January 29, 2016, and on February 11, 18, 19 and 25, 2016. The Doe 1 plaintiffs allege that the acts of bullying in those six complaints took place in the gym class taught by Quiricone, who they allege saw the incidents and told students to stop picking on Jack Doe 1. They further allege that no investigation was conducted with regard to the bullying complaints filed on April 6, 2016.

In support of their motion for summary judgment, the Doe 1 defendants submitted an affidavit from Szabo, in which she acknowledged receiving additional reports of bullying on April 6, 2016. Szabo attested that (1) those reports involved the same students against whom Jack Doe 1 previously had made bullying complaints and concerned bullying incidents that happened in gym class prior to the March 18 incident, (2) "Jack Doe 1's parents failed to complete a consent form to disclose the facts of Jack Doe 1's complaints despite being asked on more than one occasion that they do so," (3) the "additional written complaints were the same or similar in substance to what Jack Doe 1 had previously verbally described in the course of [Szabo's] discussions with him," (4) her notes indicated that she asked questions about the incidents during interviews with children, and (5) "[t]he additional written complaints of bullying matched what Jack Doe 1 had reported to [Szabo] following the March 18 incident and . . . were part of the subject of [Szabo's] interviews with students throughout March of 2016." Szabo's affidavit indicates that she accepted receipt of the complaints and generally investigated their substance, even though John Doe 1 and Jane Doe 1 failed to complete certain consent forms, which were necessary to protect Jack Doe 1's identity and for the Doe 1 defendants to investigate the complaints.

We agree with the court that the Doe 1 defendants met their burden of establishing the absence of a genu-

ine issue of material fact that they properly handled the April 6, 2016 complaints. The Doe 1 plaintiffs did not present evidence to raise a genuine issue of material fact to support their contradictory claim that the complaints were never investigated. See *Hassiem* v. *O & G Industries, Inc.*, 197 Conn. App. 631, 650, 232 A.3d 1139 ("[t]o oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents" (internal quotation marks omitted)), cert. denied, 335 Conn. 928, 235 A.3d 525 (2020). Moreover, even though the revised complaint alleges that a bullying incident occurred on April 11, 2016, during which Jack Doe 1 was called a racially derogatory name, Szabo attested that Jack Doe 1 never told her about the incident, despite the fact that he had a meeting with Szabo that same day to discuss statements he had made about another student. The Doe 1 plaintiffs did not put forth any evidence demonstrating that a report of that incident had been made.[15]

The court, therefore, properly determined that Lawrence, Quiricone, Landon, and the board are protected by statutory immunity for the claims of negligence alleged against them for violations of the plan and granted the motion for summary judgment in their favor as to counts three, four, five, eight, and nine with respect to those claims relating to the plan.

2

Governmental Immunity

The court also rendered summary judgment in favor of the Doe 1 defendants on the ground of governmental immunity[16] under § 52-557n (a) (2) (B) with respect to the allegations of negligence in counts three, four, five, eight, and nine to the extent that the allegations are not based on the plan but, instead, concern duties to supervise classrooms and to supervise and manage school employees, and in favor of the town for negligence regarding the plan in counts eight and nine.[17] "Under § 52-557n (a) (2) (B), a municipality and its agents are not liable for violations of discretionary duties, but are liable for violations of ministerial duties." (Emphasis omitted.) *Williams* v. *Housing Authority*, 159 Conn. App. 679, 697, 124 A.3d 537 (2015), aff'd, 327 Conn. 338, 174 A.3d 137 (2017). In the present case, the court concluded that, because the alleged acts or omissions of the Doe 1 defendants regarding the supervision of classrooms and the management, supervision, and retention of the school employees involved duties that are discretionary[18] and not ministerial[19] in nature, and because the Doe 1 plaintiffs failed to identify any statute or rule that imposed a ministerial duty on the Doe 1 defendants,[20] the Doe 1 plaintiffs did not demonstrate the existence of a genuine issue of material fact that the allegations of negligence against the Doe 1 defendants involved ministerial, and not discretion-

ary, acts.

Accordingly, the court concluded that the Doe 1 defendants are protected by governmental immunity under § 52-557n (a) (2) (B) for the negligence claims in these counts involving discretionary acts unless an exception to that immunity applies.[21] The Doe 1 plaintiffs, however, did not plead an exception to governmental immunity in their general denial to the special defenses filed by the Doe 1 defendants, and the allegations of their revised complaint assert that the duties of the Doe 1 defendants in relation to the plan are ministerial in nature, which precludes discretionary act governmental immunity from applying. Instead, for the first time in their memorandum in opposition to the motion for summary judgment, they argued that, even if the duties of the Doe 1 defendants are discretionary, the identifiable person-imminent harm exception to governmental immunity applies. The court declined to consider whether the identifiable person-imminent harm exception applies as a result of the failure of the Doe 1 plaintiffs to raise it in their revised complaint or in their reply to the special defenses.[22]

On appeal, the Doe 1 plaintiffs have not raised any claims challenging the court's decision regarding governmental immunity or its failure to address whether the identifiable person-imminent harm exception to that immunity applies. The Doe 1 plaintiffs' only reference to governmental immunity is in their reply brief, in which they argue that the question of whether governmental immunity under § 52-557n (a) (2) (B) applies is one for the jury to decide and should not have been decided by way of summary judgment. We decline to address that contention. See *Anketell* v. *Kulldorff*, 207 Conn. App. 807, 822, 263 A.3d 972 (declining to address claim raised for first time on appeal in reply brief), cert. denied, 340 Conn. 905, 263 A.3d 821 (2021); *Radcliffe* v. *Radcliffe*, 109 Conn. App. 21, 27, 951 A.2d 575 (2008) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" (internal quotation marks omitted)). Moreover, we deem abandoned any claim relating to the court's ruling regarding governmental immunity. See *Bayview Loan Servicing, LLC* v. *Gallant*, 209 Conn. App. 185, 187 n.2, 268 A.3d 119 (2021) (because brief was devoid of argument or analysis relating to underlying foreclosure judgment, any claim related thereto was deemed abandoned).

C

The Doe 1 plaintiffs next claim that the court improperly rendered summary judgment in favor of Lawrence, Landon, and Quiricone with respect to the claim of recklessness in count six because the claim requires a determination of their intent, which is a question of fact. We do not agree.

We first set forth the following additional facts and

general principles governing claims of recklessness that guide our resolution of this issue. Count six of the revised complaint alleges the following against Lawrence, Landon, and Quiricone: (1) "Th[ose] defendants had a duty to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan," (2) they were aware of that duty by virtue of their having created the bullying prevention and intervention policy and the plan, (3) they knew or should have known that their failure to follow the plan would have a dangerous impact on students, including Jack Doe 1, (4) they failed to follow the plan when "they failed to detect, prevent, investigate or properly investigate, and/or remediate the bullying of Jack Doe 1," (5) they "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by failing to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan and . . . [§] 10-222d," (6) they "acted with a reckless disregard of the rights and/or safety of Jack Doe 1 by refusing to comply with their obligations under the . . . [p]lan," (7) they "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by retaliating against the [Doe 1 plaintiffs]," and (8) as a result of their acts or omissions, Jack Doe 1 was placed in imminent harm.

"Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. . . . More recently, we have described recklessness as a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . Reckless conduct must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . . or even an intentional omission to perform a statutory duty . . . . [In sum, reckless] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citation omitted; internal quotation marks omitted.) *Maselli* v. *Regional School District No. 10*, 198 Conn. App. 643, 669–70, 235 A.3d 599, cert. denied, 335 Conn. 947, 238

A.3d 19 (2020).

In the present case, the allegations of recklessness in count six are based on the same allegations in support of the negligence counts, namely, that Landon, Lawrence, and Quiricone did not follow the plan and failed to detect, prevent, investigate, and/or remediate the bullying of Jack Doe 1. As this court previously has stated, "[m]erely using the term recklessness to describe conduct previously alleged as negligence is insufficient as a matter of law." (Internal quotation marks omitted.) *Northrup* v. *Witkowski*, 175 Conn. App. 223, 249, 167 A.3d 443 (2017), aff'd, 332 Conn. 158, 210 A.3d 29 (2019). Even when we view the evidence in the light most favorable to the Doe 1 plaintiffs, it does not demonstrate the existence of a genuine issue of material fact that Landon, Lawrence, and Quiricone intentionally, wilfully, wantonly, and recklessly violated the plan. In support of their motion for summary judgment, those defendants submitted investigation reports, affidavits, and deposition transcripts, all of which showed the many actions taken by them with respect to the reported bullying incidents, including responding to and verifying the acts of bullying reported, conducting interviews of students and teachers, communicating with parents, holding meetings with students and parents, taking measures to avoid further instances of bullying, and imposing punishments to those involved. Moreover, there was no evidence submitted demonstrating that the Doe 1 defendants had notice of bullying against Jack Doe 1 prior to the incident on March 18, 2016, as Jack Doe 1 testified in his deposition that he could not recall reporting any bullying to school officials prior to the March 18, 2016 incident. See footnote 15 of this opinion.

The Doe 1 plaintiffs also allege in count six that Landon, Lawrence, and Quiricone acted recklessly, wilfully, intentionally, and maliciously by retaliating against the Doe 1 plaintiffs. Their claim of retaliation is premised on the facts that Jack Doe 1 was suspended twice, his gym class was changed, and a special education planning and placement team meeting was ordered for Jack Doe 1. We are not persuaded by this claim. First, Jack Doe 1 was suspended on the basis of his admitted acts of bullying against another student and his inappropriate behavior and outburst against Szabo relating to an incident on April 11, 2016.[23] Moreover, Szabo attested in her affidavit that she decided to move Jack Doe 1 to another gym class because of information she had learned concerning his interactions with another child in the class. Finally, the Doe 1 plaintiffs have failed to address in their appellate brief how the ordering of a special education planning and placement team meeting for Jack Doe 1 constituted retaliation, or reckless or malicious behavior.

Viewing the evidence in the light most favorable to

the Doe 1 plaintiffs, we conclude that the conduct of Landon, Lawrence, and Quiricone simply cannot be characterized as an "extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Maselli* v. *Regional School District No. 10*, supra, 198 Conn. App. 670. The recklessness claim of the Doe 1 plaintiffs is premised on the same facts on which they base their negligence claims. See *Di Teresi* v. *Stamford Health System, Inc.*, 142 Conn. App. 72, 91, 63 A.3d 1011 (2013) (trial court properly rendered summary judgment with respect to cause of action alleging recklessness when "recklessness cause of action [was] essentially a recapitulation of . . . allegations of negligence"). The court, therefore, properly rendered summary judgment in favor of those defendants on the recklessness claim in count six of the revised complaint.

D

The Doe 1 plaintiffs next claim that the court improperly granted the motion for summary judgment as to count ten, which alleges a claim of respondeat superior liability against the board and the town. Our resolution of this claim requires little discussion.

Count ten of the revised complaint alleges that the board and the town breached their duty to the Doe 1 plaintiffs through the actions and omissions of their employees, agents, and officers and that, pursuant to § 52-557n, they are responsible for the negligent acts or omissions of their employees. The allegations of vicarious liability of the town and the board in count ten are premised on the doctrine of respondeat superior. Under that doctrine, liability attaches "to a principal merely because the agent committed a tort while acting within the scope of his employment." *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 505, 656 A.2d 1009 (1995). Liability under the doctrine of respondeat superior is derivative in nature, in that any liability of the principal derives from liability attaching to the agent. See *Daoust* v. *McWilliams*, 49 Conn. App. 715, 730, 716 A.2d 922 (1998). It necessarily follows that, if there is no liability that attaches to an individual or agent, there can be no derivative liability that attaches to the principal. See id.

In the present case, in their principal appellate brief, the Doe 1 plaintiffs argue that "[t]he trial court dismissed counts one through eight (except [count] two) as to the individual defendants, despite there being sufficient facts to present to a jury and without allowing [the Doe 1] plaintiffs an opportunity to present them. If this court agrees that those actions were not appropriate, then it must permit count [ten], for respondeat superior, to proceed." We, however, do not agree with the Doe 1 plaintiffs and have concluded that the court properly granted the motion for summary judgment as to the claims of negligence against Landon, Lawrence,

and Quiricone in counts three, four, five, and eight of the revised complaint. We, therefore, agree with the court's conclusion that, "[b]ecause the[se] individual defendants have met their burden of establishing the absence of a genuine issue of material fact that they are not liable for negligence, there is no individual liability to which vicarious liability against the town or the board can attach." The court properly rendered summary judgment in favor of the town and the board with respect to count ten as it pertains to the alleged negligence of Landon, Lawrence, and Quiricone.

E

The final claim of the Doe 1 plaintiffs is that the court improperly granted the motion for summary judgment when a genuine issue of material fact exists as to whether Landon or the board retaliated against the Doe 1 plaintiffs for advocating for Jack Doe 1, as alleged in counts five, six, and nine. In light of our determination that summary judgment was properly rendered in favor of Landon and the board as to those counts, as Landon and the board are protected by statutory and governmental immunity for the negligence claims in counts five and nine and there is no genuine issue of material fact that the actions of Landon did not amount to recklessness as alleged in count six, this claim of the Doe 1 plaintiffs fails.

In conclusion, we affirm[24] the summary judgment rendered in favor of the Doe 1 defendants with respect to the appeal in AC 44153.

II

AC 44122

We now address the appeal of the Doe 2 plaintiffs in AC 44122. The record before the court, viewed in the light most favorable to the Doe 2 plaintiffs as the nonmoving parties, reveals the following relevant facts and procedural history.

The Doe 2 plaintiffs filed a revised complaint on April 10, 2019, alleging the following facts. Jack Doe 2 was the victim of bullying in the town's school system from January, 2013, through at least June 22, 2017. During that time, he was called names by fellow students, ridiculed about his athletic ability, and subjected to physical assaults, threats, mental abuse, and repeated and numerous comments about his sexual orientation. On March 18, 2016, Jack Doe 2 was attacked and assaulted by four students during gym class at the middle school. The attack, which is the same one that involved Jack Doe 1, occurred in an area of the gym where the substitute gym teacher could not see the students and was not witnessed by a teacher or an administrator. Following that incident, on March 22, 2016, Jack Doe 2 filed a bullying report with the administration of the middle school, which detailed the March 18, 2016 assault. Thereafter, on March 29 and 31, 2016, bullying reports

were filed against Jack Doe 2. On or about April 5, 2016, the Doe 2 defendants substantiated that Jack Doe 2 was bullied, although there was no admission that slurs regarding Jack Doe 2's sexual orientation were used, and that same day, Szabo informed John Doe 2 and Jane Doe 2 that the allegations of bullying by Jack Doe 2 were substantiated, which resulted in Jack Doe 2 receiving a two day in-school suspension. According to the revised complaint, the Doe 2 defendants never initiated a formal or complete investigation of the bullying report filed by Jack Doe 2, and they either failed to investigate or conducted a wholly inadequate investigation of the claims alleged in the March 22, 2016 bullying report.

On or about April 29, 2016, Jack Doe 2, again, was bullied and called names, which made him extremely upset. When he attempted to report the incident to his guidance counselor, Szabo refused to allow him to do so and insisted that he speak with Szabo instead. Because Jack Doe 2 was uncomfortable speaking with Szabo, he returned to class. That afternoon, when John Doe 2 and Jane Doe 2 arrived at school to pick up Jack Doe 2, he "was visibly distraught and crying." Although John Doe 2 attempted to speak with faculty or staff at the middle school, no one was available. In February, 2018, the Doe 2 plaintiffs commenced the action underlying the appeal in AC 44122 against the Doe 2 defendants.

In counts one, two, three, four, and eight of the revised complaint, the Doe 2 plaintiffs allege claims of negligence against the Doe 2 defendants. Those claims are premised on the failure of the Doe 2 defendants to comply with a bullying prevention and intervention policy that had been adopted by the board, as well as the plan that prohibits bullying within the town's public schools, which had been developed and implemented at the direction of the board and in accordance with § 10-222d. According to the Doe 2 plaintiffs, the Doe 2 defendants were negligent under the plan by "issuing an in-school suspension to Jack Doe 2 without providing him with the details of the complaint against him and an opportunity to respond," and by failing (1) to intervene to address the repeated acts of bullying against Jack Doe 2, (2) to accept reports of bullying from the Doe 2 plaintiffs, (3) to "investigate reports of bullying against Jack Doe 2," (4) "to report acts of bullying witnessed by staff members," (5) "to disclose to the [Doe 2] plaintiffs the details of reports of bullying made against Jack Doe 2," (6) "to invite the [Doe 2] plaintiffs to a meeting with school officials to communicate the measures being taken to ensure the safety of the victim and the policies and procedures in place to prevent further acts of bullying," (7) "to develop a student safety support plan for Jack Doe 2," (8) "to develop a specific written intervention plan to address repeated incidents of bullying against Jack Doe 2," and (9) "to counsel

Jack Doe 2 regarding bullying prior to issuing discipline . . . ."

With respect to Szabo, Landon, the town, and the board, the Doe 2 plaintiffs also allege that they were negligent in allowing retaliation against Jack Doe 2. They further allege that Szabo, Lawrence, Quiricone, and Landon breached a duty of care owed to Jack Doe 2 by failing to detect, to investigate, and to remediate bullying against him, by failing to supervise students in gym class, and by allowing a hostile environment where bullying thrived, and that the town and the board breached their duties under the plan to Jack Doe 2 through the actions and omissions of their employees, agents, and officers. Finally, as to the claims of negligence, the Doe 2 plaintiffs allege that the duties of the Doe 2 defendants under the plan are ministerial in nature and that, as a result of the negligence of the Doe 2 defendants, the Doe 2 plaintiffs have suffered and will continue to suffer mental and emotional distress and have incurred expenses and fees, and that Jack Doe 2 suffered physical injuries and was negatively affected by the suspensions imposed by the middle school that were entered in his school transcript.

Count five of the revised complaint alleges a claim of recklessness against Landon, Szabo, Lawrence, and Quiricone. Specifically, count five alleges that those defendants "had a duty to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan," "knew, or should have known, of the dangerous impact [that] a failure to follow the . . . [p]lan would have on students, including Jack Doe 2," and "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by failing to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan." Count five further alleges that those defendants acted with reckless disregard to the safety of Jack Doe 2, placed him in a situation of imminent harm, and "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by retaliating against the [Doe 2 plaintiffs], including, but not limited to, suspending Jack Doe 2."

Count seven[25] of the revised complaint alleges a claim for negligent infliction of emotional distress against the Doe 2 defendants. Specifically, the Doe 2 plaintiffs allege that the conduct of the Doe 2 defendants "involved an unreasonable risk of causing emotional distress to Jack Doe 2, a minor," and "was done with a conscious disregard for the rights and safety of Jack Doe 2," that the emotional distress suffered by Jack Doe 2 was reasonable in light of the conduct perpetrated by the Doe 2 defendants, and that the Doe 2 defendants "knew, or should have known, that their conduct involved an unreasonable risk of causing emotional distress to Jack Doe 2," who suffered emotional distress

as a result of their conduct. Finally, in count nine, the Doe 2 plaintiffs allege a claim of respondeat superior liability against the town and the board, claiming that they are responsible for the negligent acts or omissions of their employees.

In response to the revised complaint, the Doe 2 defendants filed an answer and two special defenses: the first special defense alleges that they are entitled to statutory immunity under § 10-222*l* for their good faith conduct in reporting, investigating, and responding to the bullying complaints, and the second special defense alleges that, because the acts alleged in the revised complaint are discretionary in nature, they are entitled to governmental immunity under § 52-557n (a) (2) (B). The Doe 2 plaintiffs filed a general denial of the special defenses. Thereafter, the Doe 2 defendants filed a motion for summary judgment, which the court granted as to all counts. The appeal in AC 44122 followed. Additional facts and procedural history will be set forth as necessary.

A

The Doe 2 plaintiffs' first claim is that the court, in granting the motion for summary judgment, improperly failed to view the evidence in the light most favorable to the Doe 2 plaintiffs as the nonmoving parties. In support of this claim, the Doe 2 plaintiffs, similarly to the Doe 1 plaintiffs, cite general principles governing motions for summary judgment, including the principle that, in deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. See *Ramirez* v. *Health Net of the Northeast, Inc.*, supra, 285 Conn. 11. That citation to general principles, however, is followed by a conclusory statement that "the trial court failed to consider the full factual record in the light most favorable to the [Doe 2] plaintiffs when it granted [the Doe 2] defendants' motion for summary judgment." The appellate brief of the Doe 2 plaintiffs is devoid of any analysis of this claim and fails to explain how, or to set forth any specific instance in which, the court failed to construe the evidence in the light most favorable to the Doe 2 plaintiffs. Accordingly, we deem this inadequately briefed claim abandoned and decline to review it. See *DeJesus* v. *R.P.M. Enterprises, Inc.*, supra, 204 Conn. App. 707 ("parties may not merely cite a legal principle *without analyzing the relationship between the facts of the case and the law cited*" (emphasis added; internal quotation marks omitted)); see also *Rousseau* v. *Weinstein*, supra, 204 Conn. App. 855 ("[c]laims that are inadequately briefed generally are considered abandoned" (internal quotation marks omitted)).

B

The Doe 2 plaintiffs next challenge the court's granting of the Doe 2 defendants' motion for summary judg-

ment as to the counts alleging negligence. Specifically, the Doe 2 plaintiffs claim that because the allegations of negligence involve factual issues, they are not susceptible to summary adjudication. This claim applies to counts one, two, three, four, seven, and eight of the revised complaint. With respect to the negligence allegations in those counts that are premised on the failure of the Doe 2 defendants to comply with the plan, the court granted the motion for summary judgment in favor of Szabo, Lawrence, Quiricone, Landon, and the board on the ground that those individual defendants and the board are entitled to statutory immunity under § 10-222*l*. To the extent that the negligence allegations in those counts concern the discretionary duties to supervise the gym class or to manage and supervise school employees, rather than a violation of the plan, the court concluded that the Doe 2 defendants are protected by governmental immunity pursuant to § 52-557n (a) (2) (B). We address the court's conclusions regarding statutory and governmental immunity in turn.

1

Statutory Immunity

In challenging the court's ruling that Szabo, Lawrence, Quiricone, Landon, and the board are entitled to statutory immunity under § 10-222*l*, the Doe 2 plaintiffs argue that their negligence claims involve factual issues relating to whether the Doe 2 defendants acted in good faith and adequately reported and investigated the bullying allegations, as required under § 10-222*l* for immunity to apply, and that those factual issues should not have been decided on a motion for summary judgment. We do not agree.

As we stated previously in this opinion, § 10-222*l* affords immunity to school employees and the board when acting in accordance with a safe school climate plan. Specifically, § 10-222*l* (a) provides in relevant part: "No claim for damages shall be made against a school employee, as defined in section 10-222d, who reports, investigates and responds to bullying . . . in accordance with the provisions of the safe school climate plan, described in section 10-222d, if such school employee was acting in good faith in the discharge of his or her duties or within the scope of his or her employment. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct." Similarly, subsection (c) of § 10-222*l* affords immunity to a "board of education that implements the safe school climate plan, described in section 10-222d, and reports, investigates and responds to bullying . . . if such local or regional board of education was acting in good faith in the discharge of its duties. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct."

Thus, for statutory immunity under § 10-222*l* to apply to the defendant school employees—Szabo, Lawrence, Quiricone, and Landon—they must have (1) reported, investigated and responded to bullying, (2) in accordance with the provisions of the plan, (3) in good faith, and (4) in the discharge of their duties or within the scope of their employment. Similarly, for it to apply to the board, the board must have (1) implemented a safe school climate plan, (2) reported, investigated, or responded to bullying, (3) in good faith, and (4) in the discharge of its duties. Here, the parties do not dispute that the board implemented the plan and that the actions taken by the Doe 2 defendants were done in the discharge of their duties and within the scope of their employment. The primary issue before the court in deciding the motion for summary judgment was whether a factual predicate existed to raise a genuine issue of material fact regarding whether Szabo, Lawrence, Quiricone, Landon, and the board reported, investigated, and responded to bullying in good faith.

In granting the motion for summary judgment as to the negligence counts on the ground of statutory immunity, the court concluded that the Doe 2 defendants demonstrated the absence of a genuine issue of material fact that their alleged actions constituted, at a minimum, some form of reporting, investigation, and response, consistent with the plan. The court concluded that, "[a]lthough the reporting, investigation, and response to the bullying complaints here might not have been perfect, the [Doe 2] defendants . . . demonstrated the absence of a genuine issue of material fact that an investigation was, in fact, conducted on the actual bullying reports filed by the [Doe 2] plaintiffs and those against Jack Doe 2 . . . ." Because the allegations of the Doe 2 plaintiffs essentially concerned the adequacy of the actions of the Doe 2 defendants, rather than a complete failure of the Doe 2 defendants to respond at all, the court concluded that they exemplified the type of negligence for which the statutory immunity in § 10-222*l* was created.

On appeal, the Doe 2 plaintiffs argue that the liability of the Doe 2 defendants for the negligence claims hinges "on whether they were acting in good faith *and* [whether they] adequately reported, executed, and investigated the bullying allegations," both of which must be demonstrated for immunity under § 10-222*l* to apply. (Emphasis added.) The Doe 2 plaintiffs, however, have not set forth any argument in their appellate brief challenging the court's determination that the Doe 2 defendants demonstrated the absence of a genuine issue of material fact that they reported, investigated, and responded to the bullying complaints concerning Jack Doe 2 consistent with the plan. We, thus, focus our analysis on their claim that a factual issue exists as to whether the Doe 2 defendants acted in good faith.[26]

Specifically, the Doe 2 plaintiffs argue that they "set forth a significant amount of evidence to show that [the Doe 2] defendants were negligent and did not act in good faith, easily raising a genuine issue of material fact. For this reason, the trial court erred when it granted [the motion for] summary judgment [in favor of the Doe 2] defendants . . . ." In support of their claim that they met their burden of showing the existence of a disputed issue of material fact as to the bad faith of the Doe 2 defendants, the Doe 2 plaintiffs cite the same evidence as that cited by the Doe 1 plaintiffs, namely, (1) Szabo, as the safe school climate specialist, did not refer the complaints of bullying based on sexual orientation to a Title IX coordinator, as required under the plan,[27] (2) the specific written intervention plan developed by the Doe 2 defendants was generic in nature and did not address the repeated incidents of bullying against Jack Doe 2, as required under the plan, (3) the board did not conduct an informal hearing before suspending Jack Doe 2, (4) Szabo suspended Jack Doe 2 on the basis of anonymous bullying reports, in violation of the plan, (5) a meeting with John Doe 2 and Jane Doe 2 to discuss measures to prevent further incidents of bullying did not take place as required under the plan, (6) the Doe 2 defendants were aware that a curtain used in the gym created a blind spot for supervision of students, which created a hazardous condition, and (7) Landon and the board have a legal duty to ensure that school employees follow the plan and, thus, there is a genuine issue of material fact as to whether Landon and the board are liable. We are not persuaded.

We conclude that the Doe 2 plaintiffs have not set forth a factual predicate to raise a genuine issue of material fact as to whether the Doe 2 defendants acted in bad faith. As we stated in part I B 1 a of this opinion, "[b]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." (Internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, supra, 205 Conn. 171. As the parties asserting bad faith by the Doe 2 defendants, the Doe 2 plaintiffs had the burden of establishing its existence. See *Habetz* v. *Condon*, supra, 224 Conn. 237 n.11. The evidence on which the Doe 2 plaintiffs rely to show bad faith does not meet that burden. Counts one, two, three, and four of the revised complaint do not contain allegations that the Doe 2 defendants acted in bad faith by deceiving or misleading the Doe 2 plaintiffs, or that they acted with a dishonest purpose or improper motive. Rather, they allege that Szabo, Lawrence, Quiricone, and Landon breached a duty owed to Jack Doe 2, acted with disregard for the rights and safety of the plaintiffs, failed to exercise reasonable care, and failed to comply with the plan. Count eight makes similar allegations of negligence

against the board. Their conclusory assertion that the same conduct underlying their negligence allegations demonstrates bad faith by the Doe 2 defendants is not sufficient to establish the existence of a genuine issue of material fact. See *Dinnis* v. *Roberts*, supra, 35 Conn. App. 261 (in opposing motion for summary judgment, plaintiffs "failed to present the necessary factual predicate to raise a genuine issue as to the defendants' bad faith" where they simply referred to allegations of bad faith in their complaint and failed to submit supporting documentation showing bad faith by defendants).

Moreover, their claim that the issue of bad faith involves a factual question that is not properly resolved on a motion for summary judgment is unavailing when, as here, the Doe 2 plaintiffs failed to present the necessary factual predicate to raise a genuine issue as to the bad faith of the Doe 2 defendants. See *Wadia Enterprises, Inc.* v. *Hirschfeld*, supra, 224 Conn. 250 ("even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact"); *Rafalko* v. *University of New Haven*, supra, 129 Conn. App. 52 (trial court properly rendered summary judgment in favor of defendants where plaintiff failed to demonstrate evidence of bad faith). As our Supreme Court previously has stated, bad faith is not simply negligence and implies something more, such as a conscious wrongdoing with a dishonest purpose. See *Buckman* v. *People Express, Inc.*, supra, 205 Conn. 171. Therefore, with respect to the negligence counts, insofar as the negligence allegations are based on violations of the plan, the court properly rendered summary judgment in favor of Szabo, Lawrence, Quiricone, Landon, and the board on the ground that those defendants are protected by statutory immunity under § 10-222*l* for the allegations contained in those counts.

2

Governmental Immunity

The court also granted the motion for summary judgment in favor of the Doe 2 defendants on the ground of governmental immunity under § 52-557n (a) (2) (B) with respect to the allegations of negligence in counts one, two, three, four, seven, and eight to the extent that the allegations are not based on the plan and concern duties to supervise classrooms and to supervise and manage school employees, and in favor of the town for negligence regarding the plan in counts seven and eight. Specifically, the court concluded that, because the alleged acts or omissions of the Doe 2 defendants regarding the supervision of classrooms and the management, supervision, and retention of the school employees are discretionary and not ministerial in nature, and because the Doe 2 plaintiffs failed to identify any statute or rule that imposed a ministerial duty on the Doe 2 defendants, there is no genuine issue of mate-

rial fact that the allegations of negligence against the Doe 2 defendants involved ministerial, and not discretionary, acts.

The court, therefore, concluded that the Doe 2 defendants are protected by governmental immunity under § 52-557n (a) (2) (B) for the negligence claims in these counts, which involved discretionary acts, unless an exception to that immunity applies. See footnote 21 of this opinion. The Doe 2 plaintiffs, however, did not plead an exception to governmental immunity in their general denial to the special defenses filed by the Doe 2 defendants, and the allegations of their revised complaint assert that the duties of the Doe 2 defendants in relation to the plan are ministerial in nature, which precludes governmental immunity from applying. They argued for the first time in their memorandum in opposition to the motion for summary judgment that, even if the actions of the Doe 2 defendants are discretionary, the identifiable person-imminent harm exception to governmental immunity applies. The court declined to consider whether that exception applies as a result of the failure of the Doe 2 plaintiffs to raise it in their revised complaint or in their reply to the special defenses.[28] See *Lewis* v. *Newtown*, 191 Conn. App. 213, 237, 214 A.3d 405, cert. denied, 333 Conn. 919, 216 A.3d 650 (2019).

On appeal, the Doe 2 plaintiffs have not raised any claims challenging the court's decision regarding governmental immunity or its failure to address whether the identifiable person-imminent harm exception to that immunity applies. The Doe 2 plaintiffs' only reference to governmental immunity is in their reply brief, in which they argue that the question of whether governmental immunity under § 52-557n (a) (2) (B) applies is one for the jury to decide and should not have been decided by way of summary judgment. For the same reasons we declined to address an identical claim raised by the Doe 1 plaintiffs in the appeal in AC 44153, as stated in part I B 2 of this opinion, we decline to address that contention; see *Anketell* v. *Kulldorff*, supra, 207 Conn. App. 822; *Radcliffe* v. *Radcliffe*, supra, 109 Conn. App. 27; and we deem abandoned any claim relating to the court's ruling regarding governmental immunity. See *Bayview Loan Servicing, LLC* v. *Gallant*, supra, 209 Conn. App. 187 n.2.

C

The Doe 2 plaintiffs next claim that the court improperly rendered summary judgment in favor of Szabo, Lawrence, Landon, and Quiricone with respect to the claim of recklessness in count five because the claim requires a determination of their intent, which is a question of fact. We do not agree.

We first set forth the following additional facts and general principles governing claims of recklessness that

guide our resolution of this issue. Count five of the revised complaint alleges the following against Szabo, Lawrence, Landon, and Quiricone: (1) "Th[ose] defendants had a duty to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan," (2) they were aware of that duty by virtue of their having created the bullying prevention and intervention policy and the plan, (3) they knew or should have known that their failure to follow the plan would have a dangerous impact on students, including Jack Doe 2, (4) they failed to follow the plan when "they failed to detect, prevent, investigate or properly investigate, and/or remediate the bullying of Jack Doe 2," (5) they "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by failing to detect, prevent, investigate, and remediate bullying within [the middle school] in accordance with the . . . [p]lan," (6) they "acted with a reckless disregard of the rights and/or safety of Jack Doe 2 by refusing to comply with their obligations under the . . . [p]lan," (7) they "acted in a wanton, reckless, wilful, intentional, and/or malicious manner by retaliating against the [Doe 2 plaintiffs]," and (8) as a result of their acts or omissions, Jack Doe 2 was placed in imminent harm.

As we stated previously in this opinion, "[r]ecklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. . . . It is more than negligence, more than gross negligence. . . . Reckless conduct must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . . or even an intentional omission to perform a statutory duty . . . . [In sum, reckless] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citation omitted; internal quotation marks omitted.) *Maselli* v. *Regional School District No. 10*, supra, 198 Conn. App. 669–70.

In the present case, the allegations of recklessness in count six are based on the same allegations in support of the negligence counts, namely, that Szabo, Landon, Lawrence, and Quiricone did not follow the plan and failed to detect, prevent, investigate, and/or remediate the bullying of Jack Doe 2. The Doe 2 plaintiffs merely use the term recklessness to describe the same conduct that they previously described as negligent, which is not sufficient as a matter of law to support a claim of recklessness. See *Northrup* v. *Witkowski*, supra, 175 Conn. App. 249. The evidence, when viewed in the light most favorable to the Doe 2 plaintiffs, fails to demon-

strate the existence of a genuine issue of material fact that Szabo, Landon, Lawrence, and Quiricone intentionally, wilfully, wantonly, and recklessly violated the plan. In support of their motion for summary judgment, those defendants submitted investigation reports, affidavits, and deposition transcripts, all of which showed the many actions taken by them with respect to the reported bullying incidents, including responding to and verifying the acts of bullying reported, conducting interviews of students and teachers, communicating with parents, holding meetings with students and parents, taking measures to avoid further instances of bullying, and imposing punishments to those involved. Moreover, there was no evidence submitted demonstrating that the Doe 2 defendants had notice of bullying against Jack Doe 2 prior to the incident on March 18, 2016, as Jack Doe 2 testified in his deposition that he did not report any bullying to school officials prior to the March 18, 2016 incident. Furthermore, the allegations of retaliation by the Doe 2 plaintiffs do not rise to the level of recklessness necessary to defeat the motion for summary judgment. See footnote 26 of this opinion.

Because, when viewing the evidence in the light most favorable to the Doe 2 plaintiffs, the conduct of Szabo, Landon, Lawrence, and Quiricone cannot be characterized as an "extreme departure from ordinary care, in a situation where a high degree of danger is apparent"; (internal quotation marks omitted) *Maselli* v. *Regional School District No. 10*, supra, 198 Conn. App. 670; the court properly rendered summary judgment in favor of those defendants on the recklessness claim in count five of the revised complaint. Additionally, the recklessness claim of the Doe 2 plaintiffs is premised on the same facts on which they base their negligence claims. See *Di Teresi* v. *Stamford Health System, Inc.*, supra, 142 Conn. App. 91 (trial court properly rendered summary judgment with respect to cause of action alleging recklessness when "recklessness cause of action [was] essentially a recapitulation of . . . allegations of negligence").

D

The Doe 2 plaintiffs next claim that the court improperly granted the motion for summary judgment as to count nine, which alleges a claim of respondeat superior liability against the board and the town. Specifically, count nine alleges that the board and the town breached their duty to the Doe 2 plaintiffs through the actions and omissions of their employees, agents, and officers and that, pursuant to § 52-557n, they are responsible for the negligent acts or omissions of their employees. The allegations of vicarious liability of the town and the board in count nine are premised on the doctrine of respondeat superior, pursuant to which liability is derivative in nature and attaches "to a principal merely because the agent committed a tort while acting within

the scope of his employment." *Larsen Chelsey Realty Co.* v. *Larsen*, supra, 232 Conn. 505; see also *Daoust* v. *McWilliams*, supra, 49 Conn. App. 730. It necessarily follows that, if there is no liability that attaches to an individual or agent, there can be no derivative liability that attaches to the principal. See *Daoust* v. *McWilliams*, supra, 730.

In the present case, in their appellate brief, the Doe 2 plaintiffs argue that "[t]he trial court dismissed all counts as to the individual defendants, despite there being sufficient facts to present to a jury and without allowing [the Doe 2] plaintiffs an opportunity to present them. If this court agrees that those actions were not appropriate, then it must permit count [nine], for respondeat superior, to proceed." We rejected an identical claim of the Doe 1 plaintiffs in AC 44153. In light of our conclusion in AC 44122 that the court properly granted the motion for summary judgment as to the negligence claims against the individual defendants—Szabo, Landon, Lawrence, and Quiricone—in counts one, two, three, four, and seven of the revised complaint, there is no individual liability to which vicarious liability against the town or the board can attach. The court properly rendered summary judgment in favor of the town and the board with respect to count nine.

E

The final claim of the Doe 2 plaintiffs is that the court improperly granted the motion for summary judgment when a genuine issue of material fact exists as to whether Landon or the board retaliated against the Doe 2 plaintiffs for advocating for Jack Doe 2,[29] as alleged in counts four, five, and eight. In light of our determination that summary judgment was properly rendered in favor of Landon and the board as to those counts, as Landon and the board are protected by statutory and governmental immunity for the negligence claims in counts four and eight and there is no genuine issue of material fact that the actions of Landon did not amount to recklessness as alleged in count five, the claim of the Doe 2 plaintiffs fails.

In conclusion, we affirm[30] the summary judgment rendered in favor of the Doe 2 defendants with respect to the appeal in AC 44122.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Although the two actions underlying these appeals were consolidated at trial, the plaintiffs in both actions, who are represented by Attorney Piper A. Paul, filed separate appeals with this court. The appeals in both cases, although not consolidated, were scheduled to be heard together on January 4, 2022. Paul, without giving this court prior written notice, did not appear for oral argument. Pursuant to Practice Book § 70-3 (b), this court issued an order on January 4, 2022, stating that the appeals would be decided on the basis of the briefs, the record, and the January 4, 2022 oral argument of counsel for the appellees in both appeals. Moreover, although the appeals have not been consolidated, for purposes of judicial economy we write one opinion in which we address the claims raised in both appeals.

[2] John Doe 1 and Jane Doe 1 commenced the underlying action in AC 44153 alleging claims individually and on behalf of their son, Jack Doe 1, who, at all times relevant to this action, was a minor and allegedly was subjected to bullying while attending the middle school. In AC 44153, we refer to the plaintiffs collectively as the Doe 1 plaintiffs and, where necessary, individually by the pseudonyms designated in the revised complaint and as ordered by the court. See Practice Book § 11-20A (h).

[3] The revised complaint in the underlying action in AC 44153 also named as a defendant the principal of the middle school, Kris Szabo. In counts one and two of their revised complaint, the Doe 1 plaintiffs allege claims solely against Szabo for negligence and for assault and battery on Jack Doe 1, respectively. Counts six, seven, and eight also allege claims, in part, against Szabo. Because the court denied the motion for summary judgment as to count two, as it found that there was a genuine issue of material fact concerning the alleged assault and battery, and because there is not yet a final judgment as to Szabo in AC 44153, our decision as to that appeal does not concern counts one or two, or the portions of counts six, seven, and eight of the revised complaint alleging claims against Szabo, who is not involved in that appeal. Therefore, in AC 44153, we refer to the board, the town, Lawrence, Landon, and Quiricone collectively as the Doe 1 defendants and individually by name where necessary.

[4] In their appellate brief, the Doe 1 plaintiffs also claim that the court erred in granting the motion for summary judgment as to count one, which alleges a claim of negligence against Kris Szabo. As we stated previously in this opinion, the claims against Szabo are not involved in the appeal in AC 44153 because there is no final judgment with respect to the claims against Szabo. See footnote 3 of this opinion.

[5] John Doe 2 and Jane Doe 2 commenced the underlying action in AC 44122 alleging claims individually and on behalf of their son, Jack Doe 2, who, at all times relevant to this action, was a minor and allegedly was subjected to bullying while attending the middle school. In AC 44122, we refer to the plaintiffs collectively as the Doe 2 plaintiffs and, where necessary, individually by the pseudonyms designated in the revised complaint and as ordered by the court. See Practice Book § 11-20A (h).

[6] In AC 44122, we refer to the board, the town, Szabo, Lawrence, Landon, and Quiricone collectively as the Doe 2 defendants and individually by name where necessary. A primary difference between the complaints in each case is that the Doe 1 complaint contains, in count two, a claim against Szabo for the assault and battery of Jack Doe 1. No similar claim is alleged by Jack Doe 2. There is a final judgment in favor of Szabo in AC 44122.

[7] It is not disputed that Quiricone was not at the middle school on the day of the March 18, 2016 incident.

[8] The suspension stemmed from the conduct of Jack Doe 1 during the April 11, 2016 incident with Szabo. In her affidavit, Szabo attested that, on April 11, 2016, "another child reported that Jack Doe 1 had said to him that [Jack] Doe 1 and his father had initiated a criminal investigation against [the other child] and [Szabo]." Szabo investigated that incident by interviewing Jack Doe 1 in the presence of the school counselor, Ellen Redgate. Szabo further attested that, after Jack Doe 1 admitted to making that statement and others to the other child, he was asked "to write down what he said. He began to do so, but then stopped and asked to speak with his father. . . . Redgate and [Szabo] told him he could call his father, but [that they] needed for him to write down what had happened." In response, "[Jack] Doe 1 became angry, scratched out something he had begun to write, and then said that he had lied. He screamed, 'You didn't do your fucking job. You're going to lose your job.' "

[9] Because counts one and two are alleged against Szabo only and the court denied the motion for summary judgment as to count two, those counts are not at issue in the appeal in AC 44153. See footnote 3 of this opinion.

[10] All references in this opinion to § 10-222d are to the 2015 revision of the statute.

[11] Count seven of the revised complaint alleges a claim for intentional infliction of emotional distress against Landon, Lawrence, and Quiricone. The court granted the motion for summary judgment as to count seven, and the Doe 1 plaintiffs have not challenged that decision on appeal. Accordingly, we do not address the court's decision rendering summary judgment as to the claim of intentional infliction of emotional distress in count seven.

[12] See footnote 4 of this opinion.

[13] See Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

[14] The court addressed the Doe 1 plaintiffs' claim regarding a Title IX coordinator in its memorandum of decision, stating: "In the [Doe 1] plaintiffs' memorandum of law in opposition [to the motion for summary judgment], the plaintiffs, for the first time, mention Title IX [with regard] to their claims for negligence and recklessness. Any allegations concerning Title IX deficiencies have not been alleged in the revised complaint, all discrimination counts based on Title IX have been removed [to federal court] and, therefore, are not properly before the court. The [Doe 1] defendants' evidence supports that prior claims of Title IX discrimination were withdrawn and the [Doe 1] plaintiffs conceded during oral argument that Title IX and discrimination were only being mentioned as another example of how the [Doe 1] defendants did not follow the plan. Nevertheless, the [Doe 1] defendants' evidence supports that reports of bullying that included discriminatory statements were investigated and not substantiated and/or not reported at all, and the [Doe 1] plaintiffs [did] not put forth any evidence to create a genuine issue of material fact that the [Doe 1] defendants' failure to contact the Title IX coordinator was unreasonable or an extreme departure from ordinary care. The court agrees that the [Doe 1] defendants have met their burden and that no genuine issue of material fact exists as to this issue." On appeal, the Doe 1 defendants argue that the claim of the Doe 1 plaintiffs regarding a failure to refer the bullying allegations based on sexual orientation to a Title IX coordinator is not properly before this court because it was abandoned and is an unpleaded theory of liability. They further argue that, even if this court considers the issue, the record does not support the claim that Jack Doe 1 was bullied on the basis of his sexual orientation. In their reply brief, the Doe 1 plaintiffs have not addressed the abandonment issue and argue, instead, that the failure of the Doe 1 defendants to refer the bullying complaints based on sexual orientation demonstrates bad faith on their part and that one of the ministerial duties that the Doe 1 defendants did not follow was the mandate of the plan that a Title IX coordinator participate in bullying investigations that involve a legally protected classification. We agree with the court and the Doe 1 defendants that any claim regarding the failure to involve a Title IX coordinator in the bullying investigation was not properly before the court, as the revised complaint was devoid of any allegations concerning Title IX. Moreover, on appeal, the Doe 1 plaintiffs have not addressed the court's determination to that effect. Accordingly, we deem any claim relating to Title IX abandoned and decline to consider it as a basis for showing bad faith by the Doe 1 defendants or the existence of a ministerial duty that was violated.

[15] On appeal, the Doe 1 plaintiffs have not challenged the court's conclusion that the Doe 1 defendants demonstrated the absence of a genuine issue of material fact that their alleged actions constituted, at a minimum, some form of reporting, investigation, and response with respect to the bullying complaints filed on March 19 and 22, 2016. We, nevertheless, note our agreement with the court's conclusion. The evidence in the record includes multiple investigation reports regarding various bullying complaints; notes that had been compiled from interviews with students and faculty; deposition transcripts and affidavits; evidence showing that the Doe 1 plaintiffs had been notified of the incidents and the findings of the investigations and were invited to a meeting to discuss the incidents and punishments imposed, although no such meeting ever occurred; deposition testimony from Jack Doe 1 in which he stated that he could not remember reporting any incidents of bullying prior to March 18, 2016, and that he met with Szabo multiple times to discuss what happened and potential consequences for his actions; evidence showing that Szabo contacted faculty from Jack Doe 1's elementary school to see if there were any incidents between Jack Doe 1 and other students prior to the March 18, 2016 incident, and they could not remember any incidents concerning Jack Doe 1; deposition testimony from John Doe 1 acknowledging that he had cancelled some meetings scheduled with school officials; deposition testimony from Jane Doe 1 that Jack Doe 1 was offered counseling services by Szabo; deposition testimony from Quiricone that he was unaware of any conflict involving Jack Doe 1 and the other students involved prior to the March 18, 2016 incident and that he met with Szabo to discuss the class dynamics after that incident; and Szabo's deposition testimony that she had not received any bullying complaints prior to the March 18, 2016 incident, that after her investigation she issued disciplinary consequences to six students, including Jack Doe 1, that she notified the parents about her findings after she completed her investigation and offered to meet with John Doe 1 and Jane Doe 1, that she changed the schedule of one student involved by changing seven of his classes to prevent him from

interacting with Jack Doe 1, that she moved Jack Doe 1 to a different gym class due to his interactions with another child after the March 18, 2016 incident, and that she developed a safe plan for Jack Doe 1 and suggested remediation measures.

The evidence presented by the Doe 1 defendants in support of their motion for summary judgment shows the actions taken by Szabo, as the safe school climate specialist under the plan, following her receipt of the bullying complaints filed by the Doe 1 plaintiffs after the March 18, 2016 incident in the middle school gym, as well as the bullying complaints filed against Jack Doe 1 after that incident. It is apparent from the allegations of the revised complaint that the Doe 1 plaintiffs do not believe that the response of the Doe 1 defendants was adequate, and the court even acknowledged that it may "not have been perfect"; the record, nevertheless, shows that the Doe 1 defendants reported, investigated, and responded to the bullying complaints made known to them, as required under § 10-222*l* for immunity to apply. As the court explained, the allegations of the Doe 1 plaintiffs essentially concerned the adequacy of the actions taken by the Doe 1 defendants, rather than a complete failure of the Doe 1 defendants to respond at all, and, thus, they exemplified the type of negligence for which the statutory immunity under § 10-222*l* was created.

Although the revised complaint alleged that Jack Doe 1 had been the victim of bullying in the town's school system since January, 2013, when Jack Doe 1 was in fourth or fifth grade in elementary school, there was no evidence submitted in support of or in opposition to the motion for summary judgment demonstrating the existence of any bullying complaints prior to the March 18, 2016 incident or that the Doe 1 defendants knew that Jack Doe 1 had been bullied prior to that incident. Furthermore, Jack Doe 1 testified in his deposition that the bullying started when he was in fourth or fifth grade and that he was made fun of by his peers on a daily basis, although he could not recall a particular date or incident. When asked if he ever told a teacher, he replied: "No, I had assumed that the teachers had seen it because they were everywhere, and I was confident that they had seen it happening, so I assumed they'd have reported it themselves." He also could not recall whether he ever told his parents about what was happening to him at the elementary or middle school, nor could he recall ever reporting to a responsible adult at the middle school that he was being bullied at recess during sixth grade. In summary, he could not recall ever reporting bullying, either to his parents or to a responsible adult at school, before the March 18, 2016 incident. He also acknowledged that, before the March 18, 2016 incident, he never reported to anyone the names and slurs about his sexual orientation and ethnicity that he was being called at school. Although it is unfortunate that Jack Doe 1 never spoke up about the bullying that he had been subjected to over the years, the Doe 1 defendants cannot be found to have violated the plan for failing to respond to incidents of bullying about which they were never made aware.

[16] Under the common law, a municipality traditionally was immune from liability for tortious acts. See *Lewis* v. *Newtown*, 191 Conn. App. 213, 221–22, 214 A.3d 405, cert. denied, 333 Conn. 919, 216 A.3d 650 (2019). The common-law rule of governmental immunity has been abrogated by § 52-557n (a) (2). See id., 222. General Statutes § 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." "This provision incorporates our prior common-law jurisprudence extending immunity to those acts requiring the exercise of judgment on the part of the municipal actor. Discretionary acts are distinct from those that are ministerial; a ministerial act involves prescribed conduct that does not afford the actor the ability to use his own judgment. Pursuant to § 52-557n (a) (2) (B), a municipality is extended immunity from liability for discretionary acts but not for ministerial acts." (Emphasis omitted.) *Williams* v. *Housing Authority*, 159 Conn. App. 679, 690, 124 A.3d 537 (2015), aff'd, 327 Conn. 338, 174 A.3d 137 (2017). "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that the nature of the duty] and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily

involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper. . . . The issue of governmental immunity is simply a question of the existence of a duty of care, and [our Supreme Court] has approved the practice of deciding the issue of governmental immunity as a matter of law." (Citation omitted; internal quotation marks omitted.) Id., 699–700; see also *Lewis* v. *Newtown*, supra, 221 ("[t]he determination of whether a governmental or ministerial duty exists gives rise to a question of law" (internal quotation marks omitted)).

[17] We note that the court's memorandum of decision, which renders summary judgment in favor of the town on the ground of governmental immunity as to "counts seven and eight," contains a scrivener's error, as the claims of negligence against the town are contained in counts eight and nine.

[18] Our Supreme Court, "[i]n addressing the question of whether the general supervision of public school employees is a discretionary or ministerial function . . . has concluded that the administrators' 'duty to ensure that school staff members adequately discharged their assignments [is] discretionary because it [is] encompassed within their general responsibility to manage and supervise school employees.' *Strycharz* v. *Cady*, 323 Conn. 548, 569, 148 A.3d 1011 (2016), overruled in part on other grounds by *Ventura* v. *East Haven*, 330 Conn. 613, 637 and n.12, 199 A.3d 1 (2019)." *Lewis* v. *Newtown*, 191 Conn. App. 213, 231, 214 A.3d 405, cert. denied, 333 Conn. 919, 216 A.3d 650 (2019); see also *Light* v. *Board of Education*, 170 Conn. 35, 39, 364 A.2d 229 (1975) ("[i]t has been recognized that matters concerning the employment of teachers require the board of education to exercise a broad discretion").

[19] "[O]ur courts consistently have held that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, *by its clear language*, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion. . . . *Cole* v. *New Haven*, [337 Conn. 326, 338, 253 A.3d 476 (2020)]. A ministerial duty need not be written and may be created by oral directives from superior officials, the existence of which are established by testimony. . . . In contrast, descriptions of general practices or expectations that guide an employee's exercise of discretion do not create a ministerial duty." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Doe* v. *Madison*, 340 Conn. 1, 31–32, 262 A.3d 752 (2021).

[20] In its memorandum of decision, the court stated: "The only source the plaintiffs allege in their revised complaint that could create a ministerial duty is the plan, but a plain reading of the plan reveals that it does not limit the defendants' exercise of discretion in their supervision and management of the employees and students. Nothing in the plan specifically discusses supervision in classrooms. The plan specifically provides strategies for prevention and intervention that 'may include' various options, and notes in many places that the school employees 'shall' investigate reported incidents of bullying, meet with students, notify and invite a meeting with parents, and develop a safety support and intervention plan. The plan, however, does not specify exactly how these actions should be carried out and grants discretion to the defendants. Moreover, the plan acknowledges that '[b]ullying behavior . . . can take many forms and can vary dramatically in the nature of the offense and the impact the behavior may have on the victim and other students. Accordingly, there is no one prescribed response to verified acts of bullying . . . . While conduct that rises to the level of "bullying" . . . will generally warrant traditional disciplinary action against the perpetrator of such bullying . . . whether and to what extent to impose disciplinary action . . . is a matter for the professional discretion of the building principal . . . .' The plan also recognizes that '[w]hile no specific action is required, and school needs for specific prevention and intervention strategies may vary from time to time,' various prevention and intervention strategies are available for the defendants to utilize.

"Inherent in the plan is the defendants' use of discretion to determine if an action by a student resembles bullying and requires an investigation, discretion is required to 'verify' a bullying complaint, and how the bullying situation is resolved and remediated is discretionary. . . . Further, the plan requires that students and parents be notified of the plan, and that school employees be trained on identification and prevention of bullying, but does not provide how that is to be done." (Footnote omitted.)

[21] Our Supreme Court "has recognized three exceptions to governmental immunity, each of which, when proven, demonstrates that, despite the dis-

cretionary nature of the officer's acts or omissions, the officer's duty to act was clear and unequivocal so as to warrant imposing liability on the municipality." (Internal quotation marks omitted.) *Borelli* v. *Renaldi*, 336 Conn. 1, 28, 243 A.3d 1064 (2020). "First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 615–16, 903 A.2d 191 (2006).

[22] This court addressed a similar situation in *Lewis* v. *Newtown*, 191 Conn. App. 213, 228, 214 A.3d 405, cert. denied, 333 Conn. 919, 216 A.3d 650 (2019). In *Lewis*, the complaint contained allegations that the defendants and the faculty and staff of an elementary school had a ministerial duty to create and implement guidelines for school security. Id. This court noted, however, "that nowhere [did] the complaint contain any allegations that the implementation of guidelines by either the defendants or the faculty and staff was *discretionary*. The plaintiffs, rather, asserted for the first time in their opposition to the motion for summary judgment that the identifiable person-imminent harm exception applied *if the acts or omissions of the faculty and staff were discretionary*. This assertion is not applicable to the plaintiffs' argument because the identifiable person-imminent harm exception applies only to discretionary act immunity under § 52-557n (a) (2) (B), which the plaintiffs failed to raise in their complaint. . . . In sum, the viability of the plaintiffs' complaint can fairly be assessed only on the basis of the plaintiffs' claims, set forth in the complaint, that the defendants' development and implementation of school security protocols were ministerial in nature and, therefore, not protected by governmental immunity, and that the faculty and staff present in the school breached ministerial duties regarding implementation of the school security protocols." (Citation omitted; emphasis in original.) Id., 228–29. This court concluded in *Lewis* that, "[b]ecause the plaintiffs failed to allege the applicability of the identifiable person-imminent harm exception to the discretionary acts of the defendants in the operative complaint . . . the [trial] court was not required to address this claim at summary judgment. In sum, newly fashioned allegations asserting an alternative basis for recovery in defense of a motion for summary judgment are improper and may not substitute for a timely filed amended complaint." (Footnote omitted.) Id., 237.

[23] See footnote 8 of this opinion.

[24] In light of our decision, we need not address the alternative grounds for affirming the judgment raised by the Doe 1 defendants.

[25] Count six of the revised complaint alleges a claim for intentional infliction of emotional distress against Landon, Szabo, Lawrence, and Quiricone. The court granted the motion for summary judgment as to count six, and the Doe 2 plaintiffs have not challenged that decision on appeal. Accordingly, we do not address the court's decision rendering summary judgment as to the claim of intentional infliction of emotional distress in count six.

[26] We do note, however, our agreement with the court's determination that the Doe 2 defendants demonstrated the absence of a genuine issue of material fact that they reported, investigated, and responded to the bullying complaints concerning Jack Doe 2 consistent with the plan. The evidence submitted by the Doe 2 defendants in support of their motion for summary judgment included multiple investigation reports attached to various bullying complaints, notes of interviews conducted of faculty and students, and correspondence with the Doe 2 plaintiffs and parents of children involved in the March 18, 2016 incident and the incidents that followed. Moreover, the Doe 2 plaintiffs did meet with several of the Doe 2 defendants to discuss the bullying complaints and the punishment imposed. Following the March 18, 2016 incident, Szabo recommended to Jack Doe 2 that he file a bullying report and she met with him multiple times to discuss the incident. The record also shows that Lawrence was present at one of those meetings. The deposition testimony of John Doe 2 further demonstrates that he communicated with Landon and that he had spoken on the phone with Szabo and Lawrence and met with them in person as well, during which time they discussed how to deal with the bullying issues at school. Even though Quiricone was not at school on the day of the incident and testified in his deposition that he was not aware of any prior conflicts involving Jack Doe 2 and the students involved in the March 18, 2016 incident, he did meet

with Szabo to discuss the class dynamics. Finally, we note that Jack Doe 2 stated in his deposition that, prior to the March 18, 2016 incident, he had not reported any incidents of bullying to the Doe 2 defendants. Thus, although the revised complaint alleges that Jack Doe 2 had been bullied since January, 2013, the evidence submitted in support of and in opposition to the motion for summary judgment does not support a finding that the Doe 2 defendants were notified of any incidents of bullying prior to the one on March 18, 2016. It follows that the Doe 2 defendants could not have responded to and investigated incidents of bullying of which they had not been made aware.

[27] With respect to this claim, the court concluded that, because the revised complaint did not contain any allegations concerning Title IX or discrimination, such allegations were not properly before the court. The Doe 2 plaintiffs conceded at oral argument before the trial court that their references to Title IX were for the purpose of demonstrating how the Doe 2 defendants did not comply with the plan. The court concluded, nevertheless, that the evidence presented by the Doe 2 defendants demonstrated that any "reports of bullying that included discriminatory statements were investigated and not substantiated, and [that] the [Doe 2] plaintiffs [did] not put forth any evidence to create a genuine issue of material fact that the [Doe 2] defendants' failure to contact the Title IX coordinator was unreasonable or an extreme departure from ordinary care." On appeal, the Doe 2 defendants argue that the Doe 2 plaintiffs abandoned any claim of discrimination in violation of Title IX when the action was initially removed to federal court and that "the trial court properly disregarded this [unpleaded] theory of liability in deciding the . . . motion for summary judgment because the claim was not properly before it." The Doe 2 defendants further argue that the issue is not properly before this court. In their reply brief, the Doe 2 plaintiffs do not address the abandonment issue and argue, instead, that the failure of the Doe 2 defendants to refer the bullying complaints based on sexual orientation demonstrates bad faith on their part and that one of the ministerial duties that the Doe 2 defendants did not follow was the mandate of the plan that a Title IX coordinator participate in bullying investigations that involve a legally protected classification. We agree with the court and the Doe 2 defendants that any claim regarding the failure to involve a Title IX coordinator in the bullying investigation was not properly before the court, as the revised complaint was devoid of any allegations concerning Title IX. Moreover, on appeal, the Doe 2 plaintiffs have not addressed the court's determination to that effect. Accordingly, we deem any claim relating to Title IX abandoned and decline to consider it as a basis for showing bad faith by the Doe 2 defendants or the existence of a ministerial duty that was violated.

[28] See footnote 22 of this opinion.

[29] According to the Doe 2 plaintiffs, when John Doe 2 and Jane Doe 2 began to advocate vigorously on behalf of Jack Doe 2, Landon directed Szabo and Lawrence not to have contact with the Doe 2 plaintiffs. Apparently, Landon believed that the Doe 2 plaintiffs had filed criminal complaints to the police concerning the bullying incidents. Landon, thus, instructed John Doe 2 and Jane Doe 2 that if they wanted to speak with a member of the school administration, the communication had to go through an attorney. Landon also cancelled a meeting scheduled for April 13, 2016. On April 8, 2016, after Landon was informed that no criminal charges had been filed by the Doe 2 plaintiffs, he reset the meeting for April 13 and stated that he would allow the school administration to speak with John Doe 2 only.

[30] In light of our decision, we need not address the alternative grounds for affirming the judgment raised by the Doe 2 defendants.